Good morning. Good morning, Your Honors. My name is Bertha Fitzgerald. I'm here on behalf of the appellant, Carol Woods, along with Ms. Helena Segre. The issues I'm here this morning basically to do two things. First of all, of course, to answer the questions of the court and your particular concerns, but also to address, I think, three overriding issues that permeate this employment discrimination case. The first of those issues is the question of whether or not the district court properly restricted the type of evidence and the scope of the evidence that could be considered in determining whether summary judgment was appropriate. And most particularly, I'm focusing on the question of whether or not it was appropriate to totally exclude evidence of what happened before 2006. Secondly, I would like to discuss the question of whether or not there was sufficient evidence of an adverse employment action. And third, I'd like to address this notion of pretext being justified by some type of honest belief in what they did. Now, we start, of course, as the court well knows, with the summary judgment standard under Vasquez and under the court rule that says you have to draw all inferences on behalf of the non-moving party. And though I failed to mention this earlier, I would like to reserve about six to seven minutes for my co-counsel to do rebuttal. Turning back then to my argument, the question of this context. Why is it that the appellant is entitled to at least cite to the court and put in context what happened before the settlement agreement? The state argues that we cannot do that because there's a settlement agreement, this puts an end to this, there are all of these important public policies that indicate that things are at rest then. But think broader than that. How many other types of cases do we in fact say that what happens before a certain time or... The district court didn't exclude the reference to the settlement agreement. And all of this, the basis for his claims in this case, stem from events that occurred after the settlement agreement. Absolutely, Your Honor. Correct? That is correct. So what difference does it make for purposes of this summary judgment ruling? It makes a difference if you look at all the case law that comes under the civil or the evidence rule 404B. You, what the... All this might be important for purposes, if this case were to, if you were to get over the summary, if you were to get beyond summary judgment and get to trial, what happened in the past might, you might be more concerned about that. But I'm concerned right now about the court's grant of summary judgment on these particular claims or these events that took place after the settlement agreement. You've got two claims, a disparate treatment claim and a retaliation claim. Yes, Your Honor. And... It seems like with respect to what the district court said, you hit it on your second point, which was there an adverse action here. Yes, Your Honor. If I could briefly address your first concern, what difference does it make? I believe it makes a difference because if you look beyond 2006, you see the identity and the motives and the intent of the actors for post-2006 action. Well, if there's no adverse action post-settlement agreement, you don't have a claim. Absolutely, Your Honor. Okay. So why was there an adverse action here? Yes, Your Honor. There is an adverse action, first of all, because... Or what was the adverse action? The test for the adverse action is a response to protected activity in such a way that a reasonable employee would have found the challenge action adverse, such that it might dissuade a reasonable employee from bringing a complaint. That's the test. It's the same under retaliation for 1981 or for Title VII. So directing the answer... I'm going to try to bring you to what the adverse action was. Yes, Your Honor. So he gets a warning about his use of profanity, and secondarily, and correct me if I'm wrong, I understand he gets a warning because he has breached the confidentiality of an investigation. Yes, Your Honor. So in terms of a warning about his use of profanity, would a typical aggrieved person be dissuaded from pursuing remedial remedies because they might get a warning about the use of their language? I think where the Court and I will probably be disagreeing is whether you can segregate each of these incidents and in isolation say this was or was not an adverse action. I believe you have to take a look at everything that was going on at that time to determine whether a reasonable employee would be... The third thing I hear is the fact that he's got this guy who in some ways works for him, and they refuse to fire this employee he complains about for not having primed a window, two windows over, what, over a year and making some kind of leering comments about women. I think the leering comment was about his wife. Well, one of them was, but the other one... Yes. But would that typically dissuade somebody? The fact that they didn't fire some other employee for having made a comment about his wife being good-looking. What would dissuade somebody to get to the crunch of this is that they advance this disciplinary process very quickly to a final counseling process. In addition, this is in context of him making complaints where the supervisor is saying, go home and think about this before you do it. When a supervisor comes, gives an employee a message, go home and think about it before you make a complaint. That will dissuade a reasonable employee, especially if that is very soon followed by counseling and advancing to a final counseling, which is the final step before termination. When you said saying think about it would dissuade, are you saying that by itself? No, I'm saying... Adverse action? I'm saying in context... That is asking a question. No, you said that would dissuade the employee and then you added on well particularly, and well particularly kind of tends to mean anyway or beyond that. But my first point is just telling them it would dissuade them. Yes, Your Honor. That's your point? That would be my point, yes. I don't think that's actionable, is it? Your Honor, if I think... Do you really think that's actionable? If you go to complain about somebody, your supervisor, and he says think about it before you make a complaint, that becomes an actionable adverse employment action against you? Are you serious about that? What we're dealing with is I don't think you can take this out of context. Let me ask you in context because this keeps coming back and disturbing me in this case. The big evil person in this, I don't mean the supervisor, but is this guy S. What's his name? Slymon. Whatever his name is. Mr. S. He's a guy who's doing all these terrible things. When they indicate they're going to move him out of the group, get him out of there, which is one way sometimes we say employers can obviate a problem. They take the person, they take him out of the group. Mr. Wood says, no, no, no, no, no. Leave him with me. He's just got a smart mouth. He's stopped having such a smart mouth. He's a great painter. So leave him in my group. In context, that tends to cut down the horror of what this man was doing and they're not disciplining him, doesn't it? But I would like to focus, yes, Your Honor, in the way that you've said that, yes. But I do not believe that the way that you've said it is correct because I don't believe that the evidence is that this individual is the bad guy. I believe in context the supervisors, Chaney and Frankenhausen, are the individuals who are the actors and they are acting through and facilitating S. But he wants him there. He wants him there because his job is to get the work done. Of course. And he can't get the work done if he has an untrained painter. Without that man. I understand. That man is so wonderful that we might as well let him go out and sexually harass people and do all kinds of things because he's so wonderful. He's just the only great painter in the world and he has to stay there. Somehow there's something antithetical about the notion that this man is causing a horrible problem in my life and you're not doing enough about it, although the guy has been disciplined from time to time. You're not doing enough about it, but I really want him to stay working with me. You're right. That's kind of troubling. That is troubling and that appears to be an inconsistency. If you wanted to save some time for rebuttal, you're down to four and a half minutes. Thank you, Your Honor. Good morning. May it please the Court. Howard Goodfriend representing the appellees, the University of Washington and the individual appellees, all of whom are defendants below. I think the courts accurately identified the sole issues here, the disparate treatment and the retaliation claim. I want to first focus on the district court's order because it reflects a certain amount of frustration with the moving target of what particularly were Mr. Wood's complaints and his failure to identify with specificity the facts in the record that supported them. He mostly below focused on a hostile work environment claim and a failure to promote claim and arguing about the pre-2006 conduct and the effect that it had on those claims. Those claims are no longer at issue here. I would agree that the relevance of the 2006 history, the pre-2006 history, would be something that a court in the proper case could evaluate in terms of relevance, in terms of 404B, in terms of those sort of discretionary elements and particularly in a hostile work environment case might be particularly relevant. Those are not at issue here. So if you just take up disparate treatment and adverse action for a moment, it seems like the only that struck me, the only issue that really struck me for purposes of adverse action was the final counseling. Which was not raised at all before the district court. You don't have to raise particular arguments. It was listed in the complaint. It wasn't exhausted. I don't know if it was listed in the complaint because I think it postdates the complaint. It certainly wasn't before the EEOC. So it was never really passed through before the agency. But let's assume that it was. Why doesn't that qualify as an adverse action? Well, the court noted that he alleges that counseling was an adverse action but provided no facts to support that. And in fact, you know, save for a post-briefing submission of a collective bargaining agreement, which I don't think supports the argument either, there really was no discussion or evidence before the district court about what that means. The counseling or the final action? Whether it's formal counseling, informal counseling, or final counseling. It was undisputed, I think, and this is particularly important for a disparate treatment claim, which does require some adverse effect on the terms and conditions of employment, that there was no docking of pay. There was no suspension. There was no motion. Did it change his status in any way? It did not. He remained a lead. And in fact, if you look at his ---- Was he given a day off? He was given a day off with pay to attend counseling, I think. It was with pay? Yes. I mean, I think that that is what the record shows. I don't have the particular site on that. But there was no dispute that he did not lose any pay at all. That was never alleged. And I think the record shows that he was paid. There's a letter from his supervisor saying, you've chosen this day to be your day with pay for counseling. I don't have the particular page number here. But I would also point out that he got a favorable, a very favorable commendation following that counseling. Go ahead. I just want to ask you about one other aspect of the disparate treatment claim. So he has to basically allege that he was treated differently. Correct. What do you understand his argument to be as to how he was treated differently? Well, I think his argument is that he was ---- I think the closest he can come is alleging that he was written up and received counseling for using profanity, which he does not deny in his declaration that he used profanity. Right. But other people didn't. And he compares himself to not any other leads, unfortunately, but one of the people perhaps in his group, I think Mr. Schleiman, who in fact did receive counseling for his use of language and disparaging language towards women. But setting that aside, he also says that he has heard his supervisor, Mr. Frankthaler, use foul language. And he hasn't been disciplined. But what he's lacking is a comparator. What he's lacking is someone similarly situated, which is sort of the threshold element of a disparate treatment claim. And that's where I think that claim completely falls by the wayside. Regarding his supervisor who swore, is there any indication that somehow that was brought to the attention of the supervisor? The supervisors? No. That this guy was swearing? No, there's no allegation that anyone made a complaint about his supervisor's use of profanity. And, you know, I think the important point from Mr. Wood's perspective is, you know, although he says this incident was overblown, he does not really deny using the words that he was accused of using in front of his team. And that's what he received counseling about. And he received counseling. Let's be clear, that's what he received. He didn't lose any pay. He wasn't transferred. I mean, the White case, the Supreme Court case, Burlington v. White, 2006, that talks about adverse employment action, says, well, you know, it has to make a reasonable, deter a reasonable person from pursuing a claim. And what they did to Mr. White was they took him off a Burlington Northern crew operating a forklift, made him dig ditches on the track, and docked him 36 hours worth of pay. I wrote the opinion at the panel level. It wasn't Mr. White. Oh, I'm sorry. It was Ms. White. Oh, I got that wrong. It's not the first time in this case that we've mixed up sexes of people. But in any event, I apologize. And I'm not going to talk about White anymore because I guess I've been trumped. Well, I was trumped. He was trumped. Right. But, I mean, you know, it's just an example about what is adverse employment action. And I'd look, you know, I'd compare it to the Schwann case, which is out of this circuit, where this is a professor who's trying to get tenure. He's trying to get promoted. They take him out of his lab. He loses his experiments. He can't do his work. Mr. Woods did and is still doing, with good recommendations, exactly the same job, with no loss of pay, with no consequences, based upon this counseling. And you need something more. So can we turn for a moment to the retaliation claim? Certainly. So it looks like what he has left is a 1981, Section 1981 claim of retaliation, probably only involving the Frankhauser. Yeah, Frankhauser. That looks, I mean, just kind of my sense. I'm not, you know, I don't have, kind of. And one of the things, one of the items that concerns me is whether he's even identified a protected activity. And the only thing that struck me is that his retaliation has to be for his filing of the 2006 lawsuit. Well. Which involved Frankenhaus. Is that right? It didn't. It didn't. Because there was a supervisor before that. And then he claims that after that case was settled in March 2006, this new supervisor came in and started retaliating against him. But there's really, if you look at the chronology of events, he has really nothing about any adverse actions taken to him by his supervisor until he receives counseling for cursing in 2009. I mean, he says that his supervisor began this campaign against him. But his complaints are really, you know, if you look at the 2007-2008 period of time, he's complaining about Mr. Schleiman using foul language and other insults, about sexually demeaning comments towards women. You know, that's really what's going on if you look at his declaration. Well, he does sort of, he does say, or I think he implies, or maybe I'm just guessing it out of there. He does say that he was basically dissed the whole time, that this guy could go on doing whatever he wanted. He could refuse to obey him. He could do anything he wanted to do. And the supervisor wouldn't do a thing about it. He just said, oh, well, tough luck. You put up with it. And he says, I don't recall there's evidence of it, he didn't treat other people that way. He just treated me that way. Maybe he said he treated another black supervisor that way. I forget. But he didn't treat other people the way he treated me. And, you know, that really changed the conditions of my employment. Sure, I could still paint, and I'm so good that my job was still being done well. But he was putting upon me. Is that a pretty fair statement of what he's claiming? I think it is. It is. In sort of vague and conclusory terms, I think it is. And the district court attempted to tease out specifically, what exactly are you talking about? It's really undisputed, I think, that the first time Mr. Woods filed a complaint against Mr. Schliemann, you know, he alleged, well, you told me not to, but he did. And he did on June 1, 2009. And it was investigated, and Mr. Schliemann received counseling because of it. I mean, when this was brought to his supervisor in sort of, you know, a formal or even, you know, a slightly less than formal action, action was taken. And, you know, as you indicated, when there was additional problems between these people, it's undisputed that the supervisor moved this guy out of his unit, even though Mr. Woods objected to it at that point, which, as you indicate, is inconsistent. But I think the district court struggled mightily, as I did, frankly, trying to, you know, comb the record as appellate counsel, to figure out what specific allegations of disparate treatment or unfair discipline or retaliatory conduct Mr. Woods is complaining about. And they simply don't hold up under scrutiny. And for that reason, we'd ask the court to affirm. If the court has no other questions. No. I apologize for getting the facts of your case wrong. Happens all the time. Good morning, Your Honors. For the record, my name is Kermit Sabree, and I'm also one co-counsel for Mr. Woods. Let me address a couple of questions from the bench. With respect to the 2000 lawsuit, that lawsuit did involve in great detail the current supervisor, Frankenhauser. Mr. Frankenhauser was not named as a party in that lawsuit, but a sense of all of the allegations had to do with Mr. Frankenhauser not supporting Mr. Woods and not doing what he needed to do so that Mr. Woods wouldn't have to do double what he needed to do to get the job done effectively. So Mr. Frankenhauser, contrary to the counsel for the state, was actively involved in that prior 2006 lawsuit. And I think where the confusion comes in with respect to that is that there's a reference in the complaint and in the summary judgment motion that after the case was settled in 2006, in late 2006, the manager, the person that Frankenhauser reported to, who was a person that was between Frankenhauser and Dick Cheney, or not Dick Cheney, Rick Cheney, that person was replaced in late 2006. And there was some confusion about, and the complaint goes on to state that after that new person came in as acting manager, it's when the old campaign, the old conduct that had occurred, which led to the 2006 complaint, began again, began anew. So, and then I also want to address this argument of the formal counseling, why that should be viewed in this context as an adverse action. If you think about the steps of the employer's actions, they have an informal counseling, which is the first step identified in the labor contract. And that's generally similar to what used to be referred to in the old progressive discipline. They call it corrective action as opposed to progressive discipline. It's the same flavor, different label. Was the corrective bargaining agreement in front of the district judge? I thought you were just asking us to look at it late on appeal. The actual corrective bargaining, I mean, a copy of the corrective bargaining agreement was not in front of the district, but there were references to it in the deposition testimony and in the declarations that were submitted to the district court. So the district court is supposed to ferret those out? Please. The district court is supposed to ferret out those passing comments in depositions and such? I don't think that the way that they were laid out that it was necessary for the judge to ferret that out. Mr. Woods makes it very clear that, you know, when he got this formal counseling in September of 2009, that they had skipped over the first step of the corrective action process, which was the informal counseling. Then he talks about the final counseling that he received, which is the last step of the progressive discipline procedure, and that's the last step before termination. Now, that is referenced in the summary judgment motion and in Mr. Woods' declaration. Do both of those fall off after a period of time? No. So they remain, so his next transgression, it doesn't fall off his record? So how long does the final warning last is what I'm asking? Forever. It's up to the employer to determine when and if the employer wants to take that final counseling action off the employee's record. I thought there was some provision that after two or three years the employee could ask that it be removed. No. No. There are in some contracts that I've worked with, but not in this contract. And there is nothing in the record, in this record, that says that the final counseling can be removed or will be removed after a certain period. And generally if the employee doesn't engage in any similar infraction, that's generally the standard for removal. But there is no language like that. Could you just respond to your co-counsel's, opposition counsel's comments about the final counseling, which doesn't seem to have altered his pay, his responsibilities at work, or anything of that nature. It was basically got to clean up your act. Why is that an adverse action? In the disparate treatment context. When you think about it in the context of this is the final step in the process of corrective action, the final action, final counseling action is listed under Article 23.4, which says corrective action dismissal. This is the final step. I'm sorry. I don't have it available immediately, but doesn't Article 22.8 of the collective bargaining agreement say that the formal counseling can be removed after three years if there's been no subsequent bad conduct? I was talking about the final counseling. There's no provision for that removal of that. You're talking about the formal counseling, which is the second step. Did I miss? Your time has expired. Thank you so much. Thank you. We appreciate your arguments.
judges: Gwin, Fernandez, Paez